UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

PETER J. GOLDFINGER,

        Plaintiff,

- against -

WATERFRONT COMMISSION OF NEW YORK
HARBOR, THOMAS DE MARIA,
MICHAEL C. AXELROD, and
MICHAEL J. MADONNA,

        Defendants.

------------------------------------------------------------x

ECF CASE

COMPLAINT

PLAINTIFF DEMANDS
A TRIAL BY JURY



        Plaintiff Peter J. Goldfinger ("Goldfinger" or "plaintiff"), through his attorneys, Vladeck, Waldman, Elias & Engelhard, P.C., complains of defendants Waterfront Commission of New York Harbor ("the Commission"), Thomas De Maria ("De Maria"), Michael C. Axelrod ("Axelrod"), and Michael J. Madonna ("Madonna") (collectively, "defendants"), as follows:

## NATURE OF THE ACTION

        1.    Plaintiff brings this action against the Commission to remedy discrimination in employment on the basis of his age in the terms, conditions and privileges of employment, in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 et seq. ("ADEA"); and for unlawful retaliation on the basis of his engaging in activities protected by the ADEA.

        2.    Plaintiff also brings this action against all defendants for violations of the Due Process Clause of the Fourteenth Amendment of the United States Constitution (the

"Fourteenth Amendment"), the First Amendment of the United States Constitution (the "First Amendment"), and the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983 ("Section 1983").

3. Plaintiff seeks injunctive and declaratory relief, damages, statutory penalties and other appropriate legal and equitable relief pursuant to the ADEA, as well as Section 1983 and the First and Fourteenth Amendments.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over the ADEA claims, as well as claims based on Section 1983 and the First and Fourteenth Amendments, under 28 U.S.C. § 1331, as they arise under the laws of the United States, 29 U.S.C. § 626(c).

5. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about June 25, 2007, complaining of the acts of age discrimination and retaliation alleged herein. More than ninety days have passed since the claim was filed. Plaintiff has complied fully with the administrative prerequisites of the ADEA.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because the unlawful practices complained of herein occurred within the Southern District of New York.

## PARTIES

7. Plaintiff Goldfinger is a resident of the State of New York. He worked for the Commission from approximately November 2000 until the Commission unlawfully dismissed him on or about July 30, 2007, at the age of 63.

8. Upon information and belief, the Commission is an instrumentality of the States of New York and New Jersey, with its headquarters located at 39 Broadway, 4th Floor, New York, NY, 10006. The Commission is headed by two appointed commissioners – one from New York and one from New Jersey. Its mission is to investigate, deter, combat, and remedy

249318 v1

criminal activity and influence in the Port of New York-New Jersey and to ensure fair hiring and employment practices. It is an "employer" within the meaning of the ADEA.

9.  De Maria was the Commission's Executive Director, and plaintiff's supervisor; and, at all relevant times, De Maria acted under color of state law.

10. Axelrod was the New York Commissioner, and, at all relevant times, acted under color of state law.

11. Madonna was the New Jersey Commissioner, and, at all relevant times, acted under color of state law.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

12. Plaintiff received his Juris Doctor degree from Brooklyn Law School in 1985, after nearly 20 years as public school teacher at a Brooklyn high school, and is a member of the Bars of the States of New York, New Jersey, Arizona, Florida, and the District of Columbia.

13. The Commission hired plaintiff in or about November 2000 as Assistant Counsel. In this role, he was responsible for investigating applicants for licensing and registration, and for investigating already-licensed companies to ascertain whether they had engaged in any illegal activity.

14. In 2003, because of his excellent work, plaintiff was promoted to the position of Director of Licensing and Employment Information Centers, heading one of the Commission's six divisions. Among other things, the Commission's Licensing and Employment Information Centers Division processes applications by individuals and companies required to be licensed, supervises the hiring of dock workers, makes employment information available to the

dock workers, and administers the "decasualization program," which de-lists those dock workers who, without good cause, fail to work or apply for work on a regular basis.

15. Over the next approximately three-and-one-half years, plaintiff performed his job well and was praised repeatedly for his work.

16. Nonetheless, upon information and belief, in or about late 2006, De Maria embarked on a campaign to remove plaintiff from his position in order to promote plaintiff's substantially younger Assistant Director, Jeffrey Schoen ("Schoen").

17. De Maria had hired Schoen in or about February 2000. Upon information and belief, Schoen is in his mid-thirties.

18. In November 2006, De Maria announced for the first time that the Commission's Directors would be given performance evaluations. In this regard, De Maria instructed the Directors to describe, in writing, (1) their daily duties and routines; (2) their contributions to the Commission; (3) their opinions of the other Directors; and (4) their future goals for the Commission.

19. On November 16, 2006, plaintiff submitted a "Director's Personal Evaluation" to De Maria. Among other things, plaintiff described his numerous achievements as a Director, including the implementation of several programs designed to make the licensing and review procedures for dock workers more efficient and accurate, the completion of a five-year renewal program for the licensing of stevedores, the implementation of a Department of Homeland Security program designed to confirm the work eligibility of foreign-born applicants, the removal of 257 individuals from a list of eligible dock workers, and the identification of hiring and audit control violations that resulted in the payment of back assessments to the Commission.

20. De Maria did not respond to plaintiff's self-assessment for five months, nor did he make any statements critical of plaintiff's performance during their weekly meetings.

21. Nonetheless, on or about April 18, 2007, plaintiff received a negative performance evaluation from De Maria. The evaluation contained numerous false criticisms of his performance that reflected De Maria's ageist views. For example, without any specifics, De Maria described plaintiff as being "forgetful and sometimes confused," "stubborn in his ways," "reluctant to accept or to adopt a view offered by a co-worker" and "set in his ways and not very flexible or willing to change."

22. During plaintiff's more than three-year tenure as Director, De Maria had never discussed these alleged performance issues with him. Yet, without warning, De Maria now wrote, falsely, that plaintiff "does not possess the necessary skills or characteristics of a Director."

23. De Maria's comments undeservedly questioned plaintiff's competence and served to damage plaintiff's professional reputation.

24. In his evaluation, De Maria made clear his desire to promote plaintiff's younger co-worker, Assistant Director Schoen, to a more senior role. For example, De Maria falsely wrote that Schoen acts "like a safety net" who "picks up the slack" for plaintiff.

25. On April 20, 2007, plaintiff submitted a response to De Maria's false criticisms. He also requested that De Maria provide him with specifics regarding the basis for the negative evaluation.

26. On May 1, 2007, plaintiff met with De Maria and the Commission's General Counsel, Jon S. Deutsch ("Deutsch"). De Maria refused to discuss the negative evaluation with plaintiff. He also refused to provide plaintiff with any specific instances

supporting his false criticisms of plaintiff's performance, or to provide plaintiff with the names of individuals who may have been critical of his performance. Rather, after having served as a Director for more than three years, De Maria stated that plaintiff had to "shape up" and "earn the right to be a Director." De Maria placed plaintiff on a two-month probationary period and threatened to terminate his employment at that time.

27. Upon information and belief, De Maria set plaintiff up to fail. He did not provide plaintiff with goals to meet, or with any specifics as to how he could purportedly improve his performance over the next two months.

28. On May 24, 2007, through his attorneys, plaintiff notified the Commission of De Maria's disparaging treatment and discriminatory actions.

29. Almost immediately thereafter, De Maria began to retaliate against plaintiff. De Maria stopped discussing routine business matters with plaintiff in person; and, on June 6 and 7, 2007, for the first time, plaintiff received four memoranda from De Maria falsely criticizing his performance. Plaintiff responded to each of the trivial and unwarranted criticisms in De Maria's memoranda.

30. By placing plaintiff's employment on probationary status and subjecting him to additional unwarranted criticism, defendants did further damage to plaintiff's professional reputation, unfairly creating obstacles with regard to plaintiff's ability to perform his current job and future jobs in his profession.

31. Plaintiff believed that De Maria's discriminatory treatment, as an executive-level employee at a government body tasked in part with ensuring fair hiring practices, was a matter of public concern.

32. Plaintiff filed an EEOC Charge on June 25, 2007, which was faxed to Deutsch, the Commission's General Counsel, at 10:24 a.m. on the same day.

33. Later that afternoon, at about 4:30 p.m., De Maria presented plaintiff with a memorandum stating that, among other things, he found plaintiff's claims of age discrimination "insulting."

34. On July 30, 2007, a little over a month after plaintiff filed his claim with the EEOC, defendants terminated his employment. De Maria stated that plaintiff was being terminated because his attitude had gotten worse.

35. Upon information and belief, Axelrod and Madonna were involved in the decision to terminate plaintiff's employment.

36. In addition to terminating plaintiff's employment, defendants also challenged his subsequent unemployment benefits claim, despite the fact that he was clearly eligible for unemployment benefits since his employment had been terminated involuntary, and without a good cause basis such as absenteeism or other misconduct.

37. Among other things, plaintiff's reputation was further damaged because, upon information and belief, in challenging plaintiff's unemployment benefits claim, defendants presented the Commission's false and discriminatory comments about plaintiff to the New York State Department of Labor ("DOL").

38. After an investigation, the DOL rejected defendants' baseless arguments and restored plaintiff's unemployment benefits in full.

39. Upon information and belief, defendants contested plaintiff's request for unemployment benefits, without valid justification, in order to further retaliate against him for his claim of age discrimination.

## FIRST CAUSE OF ACTION AS AGAINST THE COMMISSION

### Age Discrimination Under the ADEA

40. Plaintiff repeats and realleges paragraphs 1-39 of this Complaint as if fully set forth herein.

41. By the acts and practices described above, defendants have discriminated against plaintiff in the terms and conditions of his employment on the basis of his age, in violation of the ADEA.

42. Defendants knew that their actions constituted unlawful discrimination on the basis of age or showed reckless disregard for plaintiff's statutorily protected rights. These violations are willful within the meaning of the ADEA.

43. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendants' discriminatory acts.

## SECOND CAUSE OF ACTION AS AGAINST THE COMMISSION

### Retaliation Under the ADEA

44. Plaintiff repeats and realleges paragraphs 1-43 of this Complaint as if fully set forth herein.

45. By the acts and practices described above, defendants have retaliated against plaintiff for his opposition to unlawful employment practices in violation of the ADEA.

46. Defendants knew that their actions constituted unlawful retaliation or showed reckless disregard for plaintiff's statutorily protected rights. These violations are willful within the meaning of the ADEA.

47. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendants' retaliatory acts.

## THIRD CAUSE OF ACTION AS AGAINST ALL DEFENDANTS

### Violation of the First Amendment

48. Plaintiff repeats and realleges paragraphs 1-47 of this Complaint as if fully set forth herein.

49. By the acts and practices described above, defendants acted under color of state law and retaliated against plaintiff for his exercise of his right to speak on matters of public concern and to access and petition the EEOC and the courts, in violation of his free speech rights under the First Amendment.

50. Defendants' outrageous retaliatory actions were motivated by evil motive or intent, or demonstrated their reckless indifference or callous disregard for plaintiff's constitutional rights.

51. As a result of defendants' acts, plaintiff has suffered, is suffering, and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation and other compensable damage unless and until this Court grants relief.

## FOURTH CAUSE OF ACTION AS AGAINST ALL DEFENDANTS

### Violation of the Due Process Clause of the Fourteenth Amendment

52. Plaintiff repeats and realleges paragraphs 1-51 of this Complaint as if fully set forth herein.

53. By the acts and practices described above, defendants acted under color of state law and, by subjecting plaintiff to reputational harm and dismissal, violated plaintiff's liberty interests under the Fourteenth Amendment.

54. Defendants' outrageous actions were motivated by evil motive or intent, or demonstrated their reckless indifference or callous disregard for plaintiff's constitutional rights.

55. As a result of defendants' acts, plaintiff has suffered, is suffering, and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation and other compensable damage unless and until this Court grants relief.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court enter an award:

(a) declaring that the acts and practices complained of herein are in violation of the ADEA, as well as Section 1983 and the First and Fourteenth Amendments;

(b) enjoining and permanently restraining these violations of the ADEA, as well as Section 1983 and the First and Fourteenth Amendments;

(c) directing defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect plaintiff's employment opportunities;

(d) directing defendants to reinstate plaintiff to the position he would have occupied but for defendants' unlawful conduct and making him whole for all earnings he would have received but for defendants' unlawful conduct, including, but not limited to, wages, pension, 401(k) contributions, bonuses, and other lost benefits;

(e) directing defendants to pay plaintiff an additional amount as liquidated damages, as provided by Section 7(b) of the ADEA, 29 U.S.C. § 626(b);

(f) directing defendants to pay plaintiff punitive damages;

(g) directing defendants to pay an additional amount to compensate plaintiff for the emotional distress that defendants' unlawful conduct has caused plaintiff;

(h) directing defendants to pay an additional amount to compensate plaintiff for the harm to reputation that defendants' unlawful conduct has caused plaintiff;

    (h)    awarding plaintiff such interest as is allowed by law;

    (i)    awarding plaintiff his reasonable attorneys' fees and costs; and

    (j)    granting such other and further relief as the Court deems necessary and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, a trial by jury in this action.

Dated: New York, New York  
       February 14, 2008

VLADECK, WALDMAN, ELIAS  
& ENGELHARD, P.C.

By: _____  
Valdi Licul (VL 1468)  
Attorneys for Plaintiff  
1501 Broadway, Suite 800  
New York, New York 10036  
(212) 403-7300

249318 v1